**Samuel T. ROBINO, Appellant,**

v.

**Eleanor Holmes NORTON, Chair, Equal Employment Opportunity Commission, Appellee.**

**No. 81–1256.**

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1982.

Decided July 2, 1982.

William E. Shull, Kearney, Mo., for appellant.

Michael J. Connolly, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, W. Sherman Rogers, E.E.O.C., Washington, D. C., for appellee.

Before ROSS, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

STEPHENSON, Senior Circuit Judge.

The single issue in this case is whether the findings of fact adopted by the district court[1] are clearly erroneous. After a thorough review of the record, we have concluded that there is ample evidence to support the lower court's decision and we affirm.

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, presiding.

Plaintiff-appellant asserts the defendant discriminated against him on the basis of national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The case was assigned to Magistrate Ralston as a special master (28 U.S.C. § 636)[2] to hear evidence and to submit a written report. In his report and recommendation the magistrate assumed, for purposes of argument, that the plaintiff had established a prima facie case of discrimination. The magistrate then focused on whether the defendant's failure to promote the plaintiff and his later discharge were based on a "legitimate, nondiscriminatory reason" or whether it was based upon the plaintiff's national origin and/or in retaliation for his filing of numerous grievances and complaints against his employer. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981); *Vaughn v. Westinghouse Electric Corp.,* 620 F.2d 655, 657 (8th Cir. 1980), *vacated on other grounds,* 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981). *See also Keys v. Lutheran Family & Children's Services,* 668 F.2d 356, 358 (8th Cir. 1981).

After a detailed discussion of the facts, the magistrate concluded that, even assuming the establishment of a prima facie case, the "defendant has convincingly proved the existence of legitimate, nondiscriminatory and nonretaliatory reasons for each of the employment decisions which were made." The district court adopted the magistrate's recommendation.

The plaintiff in this case, Sam Robino, is a Caucasian male of Italian descent. He worked for the Equal Employment Opportunity Commission in Kansas City, Missouri, from February 1968, until his termination on March 1, 1975. He worked as an investigator with that office until 1971, when the employer was reorganized. He was then shifted to the position of equal opportunity specialist (conciliator). Robino's two main complaints concern the Commission's failure to promote him to the head of his department when a vacancy occurred there in February 1974, and his discharge approximately a year later.

Concerning the failure to promote charge, several witnesses called on behalf of the defendant testified concerning the individual who was chosen to fill this vacancy. Their testimony made it clear that this person, Joseph Doherty, was highly qualified for the position and was experienced in supervisory offices. In fact, Doherty was one of the supervisors of the Investigation Unit in the Kansas City District Office. The duties and responsibilities were essentially the same and under existing regulations the lateral transfer could be made promptly. The plaintiff had not been in a supervisory position prior to the opening of this vacancy. There was also testimony concerning the plaintiff's lack of the qualities necessary to be a supervisor. Specifically, Robino's former supervisor had stated in a performance appraisal that Robino tended to waste time and socialize too much, had difficulty analyzing situations and arriving at sound conclusions, lacked ability to work with others, had no capability for more difficult jobs and had reached the peak of performance at his present level. Robino was cross-examined with reference to this report.

The magistrate found that "[d]efendant proved at trial that the position plaintiff sought was filled by the lateral transfer process solely based upon the practicality of this method and the qualifications of Joseph Doherty, the person who was transferred into that position." Further, that plaintiff could not have been laterally assigned into the supervisory position in the Conciliations Unit on a permanent basis because he did not hold the requisite rank or grade. Plaintiff failed to demonstrate that the reasons articulated by the defendant were pretextual and considering the evidence as a whole, he failed to prove discriminatory or retaliatory action by the defendant which resulted in its failure to promote him. Based on our review of the record, we cannot say these findings were clearly erroneous.

---

**2.** *See also* 42 U.S.C. § 2000e–5(f)(5).

The facts leading up to Robino's eventual dismissal also demonstrate that his claim concerning this action is without merit. The new supervisor, Doherty, received complaints about Robino's work. Because of these complaints, Doherty requested that Robino inform him of the status of his work and that he allow Doherty to accompany him when he went out in the field to conduct conciliation proceedings. Robino refused to do so.

Eventually, Doherty gave Robino an oral warning concerning his work performance citing Robino's refusal to accept supervisory guidance, his low productivity and his low success rate in the conciliations. Doherty also noted that Robino spent an unusual amount of time on nonproductive functions, specifically, working on his own grievances and complaints. About this same time, Robino made several oral threats toward Doherty saying that he would "make a lot of people sweat when he got them on the stand" and that Doherty "would be sorry if [he] pursued [the warning given earlier in the day]." The following day Doherty issued a warning letter to Robino concerning his hostile conduct and the need for improvement in his job performance. A ninety-day warning letter was issued by Doherty to Robino on August 9, 1974, concerning Robino's unsatisfactory productivity and his refusal to accept supervisory guidance.

The record discloses that Robino's job performance was far below the other members of the office. The magistrate concluded that Robino's production level was lower than the other conciliators in the unit, that he received adequate warning concerning his poor level of production and that after the time he was warned of his poor performance he failed to meet the requirements of his supervisor.

It is important to note that the plaintiff does not attack the denial of the promotion and discharge on the basis of due process. It does appear that some of the procedures adopted by the employer unconnected with the failure to promote and dismissal were, in some ways, deficient.[3] However, these defects were not so faulty as to taint the refusal to promote and ultimate dismissal.

The magistrate concluded that the plaintiff's pursuit of the grievance procedures within the agency involved an exceptionally time consuming effort which, to a large degree, created disruption within the agency. However, the employer, by showing the plaintiff's low productivity, along with his total failure to accept supervisory guidance, established legitimate nonretaliatory reasons for plaintiff's removal, reasons which the plaintiff has failed to prove were pretextual. We are satisfied that this finding is not clearly erroneous.

The plaintiff also points to several remarks made by his supervisor concerning Italians as being derogatory and representing his superior's prejudices against him.[4] He also points to several pieces of evidence which indicate that his supervisors were upset with him for filing a number of grievances. Both of these points do not subtract from the fact that there were legitimate nondiscriminatory reasons for the actions taken by the employer in this case. The off-hand references concerning Italian people by his supervisor are certainly not sufficient to demonstrate a national origin discrimination especially when there were such valid and numerous reasons for the actions taken by the employer. Further, the fact that his employer complained about the grievances filed by the plaintiff is not as important as the fact that these numerous filings took away from the plaintiff's time to perform assigned work.

3. The magistrate noted that the 90-day warning letter as well as several other actions taken by the employer were later held in administrative proceedings to be procedurally defective. The magistrate observed, and we agree, that these defects did not prevent the 90-day letter from serving as a means of advising the plaintiff of instances of unsatisfactory performance to be considered in any removal action.

4. The plaintiff points to two occasions in 1973, in which the then director of the Kansas City E.E.O.C. office, Franc Herndon, made references to the "Mafia" in the plaintiff's presence. The magistrate noted that from the context of these remarks it was clear that the director intended them as good natured joking comments which were not personally directed at plaintiff.

This court is, of course, restricted by the clearly erroneous rule in its review of the district court's determination of the relevant facts. Our review has been further limited by *Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (implicitly overruling *Strecker v. Grand Forks,* 640 F.2d 96, 99 (8th Cir. 1980) (en banc)). In *Pullman-Standard,* the Court ruled that all the facts determined by the district court are subject to the clearly erroneous rule. Prior to this case, the Eighth Circuit, as well as a number of other circuits, had adopted a rule whereby subsidiary facts leading up to the ultimate determination of liability were subject to the clearly erroneous rule but the decision concerning whether there was intentional discrimination was not subject to the clearly erroneous restriction. *Pullman-Standard* requires the reviewing court to give more deference to the lower court's findings of fact. *See Pullman-Standard v. Swint, supra,* —— U.S. at —— – ——, 102 S.Ct. at 1790–1791.

Our independent examination of the record indicates that the judgment of the district court is based on findings of fact that are not clearly erroneous and that no error of law appears. The judgment of the district court is, therefore, affirmed.

Affirmed.