Kristen NELLIS, Plaintiff-Appellant,

v.

BROWN COUNTY, Defendant-Appellee.

No. 82–2709.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1983.
Decided Dec. 14, 1983.

854

Lise Lotte Gammeltoft, Kaftan, Kaftan, Kaftan, Ostrow, Gilson & Geimer, S.C.M., Green Bay, Wis., for plaintiff-appellant.

John C. Jacques, Brown County Corp. Counsel, Green Bay, Wis., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and WYATT, Senior District Judge.[*]

COFFEY, Circuit Judge.

Appellant, Kristen Nellis, appeals an order of the United States District Court for the Eastern District of Wisconsin, dismissing her complaint against Brown County for sex-based employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976). We affirm.

I.

The evidence at trial revealed that the appellant, Kristen Nellis, commenced em-

[*] Honorable Inzer B. Wyatt, Senior District Judge of the Southern District of New York, is sitting by designation.

ployment with the Brown County Department of Social Services ("BCDSS") as a "Stenographer I" in 1966. In 1971, Nellis became an "Administrative Assistant I" ("AA I") in the clerical unit and in 1975 was reclassified as an "Administrative Assistant II" ("AA II") in the clerical unit.[1] In October, 1978, Nellis' supervisor, Bernice Johnson, sent a letter to Ralph Hantke, Personnel Specialist for the Wisconsin Department of Health and Social Services, requesting that Nellis be reclassified from "AA II" to "AA III." Johnson supported this request with claims that Nellis had greater involvement in personnel matters, reporting requirements, and the food stamp program, increased supervisory responsibilities, and, finally, a thorough knowledge of the legal aspects of "third-party liability" procedures. Hantke responded, "I would approve request," but further testified that "[a]s far as I was concerned, at this time the request was really an informal request and would have to go through the proper county channels to be a formal request to us."

In April of 1980, James Jetzke, a personnel analyst for the Brown County Personnel Department, responsible for reviewing the reclassification requests of BCDSS employees, sent a "job analysis questionnaire" to Nellis, asking her to "describe each major function" of the duties she performed as an "AA II." On April 15, 1980, Jetzke conducted an interview with Nellis which was followed by an interview with Nellis' supervisor, Bernice Johnson. On May 15, 1980, Jetzke sent a letter to Nellis which stated in pertinent part:

"After examining the information provided by you and others, I firmly believe that your current classification of an Administrative Assistant II is appropriate.

I have based my conclusion on the following:

1. Ralph Hantke, Personnel Specialist for the Wisconsin Department of Health and Social Services, testified that, "A reclassification is a retitling of a classification based upon a natural outgrowth of duties and responsibilities where the job actually changes through a gradual and natural process."

First, an Administrative Assistant III should have the authority for hiring personnel. Currently, the incumbent [Nellis] does not have this authority. However, the incumbent does interview and assign some personnel to various duties.

Second, an Administrative Assistant III develops and installs operating procedures. The current incumbent's authority is more recommendatory than final when procedures are developed and installed.

Finally, an Administrative Assistant III is accountable for all personnel and business management functions of an agency. The incumbent is not accountable for these functions. Such responsibilities are held by the incumbent's immediate supervisor."

During this same time period, George Torrey, a welfare fraud investigator for BCDSS since 1974, was also seeking a reclassification to "AA III." In December, 1977, Joe Schiebel, Torrey's supervisor and the Deputy Director of BCDSS, sent a letter to Hantke, requesting that Torrey be reclassified from his "AA I" position. In January, 1978, Hantke indicated that he would approve a reclassification of Torrey from "AA I" to "AA III." According to Hantke, the reason for this two-step reclassification was "that Administrative Assistant III was probably the top level for this kind of position, based on the letter of justification sent by Mr. Schiebel. So, I figured why monkey around with a two step reclassification, why not go from I to III right off the bat." [2] For apparent fiscal reasons, the BCDSS only reclassified Torrey as an "AA II," effective January 1, 1978.

In July, 1979, Torrey asked his supervisor, Joe Schiebel, to resubmit his name for re-

classification as an "AA III." Thereafter, Jetzke sent a "job analysis questionnaire" to Torrey, which he completed, and on April 18, 1980, three days after the Nellis interview, Jetzke interviewed Torrey. On May 12, 1980, Jetzke submitted to the Brown County Personnel Committee Board, a letter recommending the reclassification of Torrey from "AA II" to "AA III." The letter stated in pertinent part:

"I have reviewed the request to reclassify *George Torrey* from an Administrative Assistant II to an Administrative Assistant III. The review consisted of an evaluation of the enclosed job analysis questionnaire, the formal job audit with Mr. Torrey, a review of that audit with Mr. Torrey's supervisor, and a review with Mr. Ralph Hantke of the Wisconsin Department of Health and Social Services, County Merit System Section.

Mr. Torrey is responsible for investigating alleged welfare fraud for the Brown County Department of Social Services. His work requires independent action and responsibility. Supervision received by Mr. Torrey is minimal and more administrative. Similar duties in other counties are accomplished by investigators in the Sheriff's Department or the District Attorney's Office. Mr. Torrey's accomplishments are detailed each year in the Department of Social Services Annual Report. A copy of the 1979 report is attached.

Therefore in regard to the aforementioned review and evaluation, I recommend, with the concurrence of the Personnel Director, that the position of Agency Investigator be reclassified from Administrative Assistant II to Adminis-

---

**2.** Mr. Hantke further explained the reason for initially placing "welfare fraud investigator" in the "AA I" classification:

"The Administrative Assistant series is, first of all, a very generic series. It attempts to include all different kinds of positions. It was the philosophy of the department not to proliferate the number of classifications by having a single job classification for a unique

position. If we could use an existing series, we used an existing series. So, instead of creating a fraud investigator or a welfare fraud investigator classification and having it approved through the normal channels whereby everybody would have a chance to comment, someone chose the Administrative Assistant I classification for this particular job function, welfare fraud investigator."

trative Assistant III...." (emphasis original).

Based upon this letter, the Brown County Personnel Committee Board reclassified Torrey as an "AA III."

On May 22, 1980, Nellis filed a complaint with the Wisconsin Department of Industry, Labor and Human Relations, Equal Rights Division, claiming sex-based employment discrimination. An investigation by the department resulted in a finding that probable cause existed to believe that sex discrimination had occurred regarding Nellis' conditions of employment and wages at BCDSS.

On October 15, 1981, Nellis filed a complaint in the United States District Court for the Eastern District of Wisconsin, alleging sex-based employment discrimination on the part of Brown County, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976). Nellis claimed that she was entitled to backpay from the time of her "AA III" reclassification denial to the time of her promotion to "AA IV" on June 8, 1981.[3] On September 23, 1982, following a two-day bench trial, the trial judge issued a Decision and Order dismissing Nellis' complaint. On appeal, the sole issue before this court is whether the trial judge erred in dismissing appellant's complaint.

## II.

■ In an action for sex-based employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976), the plaintiff has "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff...." *Texas*

3. On June 8, 1981, Nellis was promoted to "AA IV" to fill the vacancy left by the retirement of her previous supervisor, Bernice Johnson. Unlike a reclassification, which creates a new job classification, a promotion is the movement from one position to an already established yet unfilled position which has a higher classification.

4. We note the United States Supreme Court's decision to grant certiorari in the case of

*Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ("*Burdine*"). *See also Sherkow v. State of Wisconsin,* 630 F.2d 498, 502 (7th Cir.1980). The United States Supreme Court has developed a "division of intermediate burdens [which] serve[ ] to bring the litigants and the court expeditiously and fairly to this ultimate question." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Those intermediate burdens, initially set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("*McDonnell Douglas*"), are as follows:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (citations omitted).

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (citing *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Accord United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) ("*Aikens*"). *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Lee v. National Can Corp.,* 699 F.2d 932, 935–37 (7th Cir.1983); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281 (7th Cir.1977).[4]

*Vaughn v. Westinghouse Electric Co.,* 702 F.2d 137 (8th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 272, 78 L.Ed.2d 253 (1983). The issue before the Court is whether an employer's presentation of a nondiscriminatory reason for its actions shifts the burden to the employee to prove discriminatory intent on the part of the employer. The Court's decision will not affect the outcome of this case due to the fact that the district court has already reached and con-

At trial, Brown County initially argued that because Nellis and Torrey were only seeking reclassification and, thus, were not competing for the same job, Nellis failed to prove a prima facie case. The district court ruled, however, that Nellis met the first intermediate burden of establishing a prima facie case:

"From the bench, prior to the taking of testimony, I concluded that the uncontested facts established a prima facie case of discriminatory treatment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973). I made my finding because it was undisputed that the plaintiff was a woman, that she and a male employee—Mr. Torrey—were similarly situated to the extent that both were Administrative Assistant II's attempting to be reclassified as Administrative Assistant III's, and that they were treated differently because only Torrey was reclassified."

Following this ruling, Brown County proceeded to the second intermediate burden and introduced evidence of a "legitimate, nondiscriminatory reason" for denying Nellis' reclassification. Brown County's decision to introduce evidence of a "legitimate, nondiscriminatory reason" falls within the United States Supreme Court's proviso in *Aikens:*

"The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' [*Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).] *Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.* The district court has before it all the evidence it needs to decide whether

sidered the issue of Brown County's discrimi-

er 'the defendant intentionally discriminated against the plaintiff.'" (emphasis added) (citing *Burdine,* 450 U.S. at 253 [101 S.Ct. at 1093]).

103 S.Ct. at 1482. In this instance, Brown County, attempted to rebut a prima facie case by introducing evidence of a "legitimate, nondiscriminatory reason" for denying Nellis' reclassification, thus according to *Aikens,* the issue of a prima facie case is no longer relevant.

We turn to the second intermediate burden set forth in *McDonnell Douglas,* whether the defendant "articulate[d] some legitimate, nondiscriminatory reason for the employee's rejection." Appellant asserts that Brown County failed to meet this intermediate burden and that the district court erred in finding that Brown County had articulated "some legitimate, nondiscriminatory reason" for denying Nellis' reclassification. Appellant further contends that upon Brown County's failure to meet this intermediate burden, the district court was required to "enter judgment for the plaintiff because no issue of fact remain[ed] in the case." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

The United States Supreme Court provides an instructive analysis of this second intermediate burden:

"The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. *See* [*Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978)]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible

natory intent.

evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . ." (footnotes omitted).

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. *See also Sherkow v. State of Wisconsin,* 630 F.2d at 503 n. 3. Based upon the foregoing analysis, we must determine if Brown County clearly articulated a "legitimate, nondiscriminatory reason" for denying Nellis' reclassification.

■ The trial record revealed that Nellis, a member of the BCDSS clerical unit, and Torrey, a welfare fraud investigator for BCDSS, were each classified as an "AA II" and that each sought reclassification as an "AA III." Brown County relied chiefly upon the testimony of James Jetzke, a personnel analyst for Brown County, responsible for reviewing the reclassification requests of BCDSS employees, to explain the denial of Nellis' reclassification. Jetzke testified that, "an Administrative Assistant III [has] quite a bit of autonomy, independent judgment, and [uses] individual initiative in directing his work."[5] The duties and responsibilities of an "AA III" include supervision of records and special surveys, interviewing and appointing personnel, acting as a liaison officer between departments, employees, and the director, and developing operating procedures and training programs. *See* Wis.Adm.Code section PW–PA10, County Merit System Classification Plan. Based upon an interview with Nellis, a review of Nellis' "job analysis questionnaire," and an interview with Nellis' supervisor, Bernice Johnson, Jetzke concluded

that Nellis' authority to appoint personnel and develop operating procedures was "recommendatory," and that "all of these decisions must be approved by her supervisor." Jetzke added that Nellis "recommended more than she had the authority to go in and initiate such policies and procedures on an agency wide basis."

Jetzke supported this testimony with notations that he made during Nellis' interview, "assigns work and is first disciplinary contact" but that "all of her decisions must be approved by Bernice Johnson." Finally, Brown County introduced into evidence Jetzke's letter of May 15, 1980, which set forth Jetzke's reasons for denying Nellis' reclassification request. In the letter, Jetzke explained that Nellis did not satisfy the statutory standards of "AA III" because she did not have authority to hire personnel, her authority to develop and install operating procedures was more in the nature of recommending such procedures, rather than directing their implementation, and she was not accountable for all personnel and business management functions within her agency. Accordingly, we hold that in light of the United States Supreme Court's language in *Burdine,* Brown County produced more than ample evidence to articulate a "legitimate, nondiscriminatory reason" for denying Nellis' reclassification.

We next consider appellant's claim that if Brown County did satisfy the second intermediate burden of *McDonnell Douglas,* the trial judge erred in his ultimate finding of fact that Brown County did not intentionally discriminate against Nellis. The trial judge stated:

"In reviewing the evidence, I find that the prior job functions of Nellis and Torrey were different. Because they performed different tasks as Administrative

5. According to Wis.Adm.Code section PW–PA10, County Merit System Classification Plan, the definition of an Administrative Assistant III, at the time in question, was as follows:

"This is an administrative position responsible directly to the chief administrator of an agency. Under general director performs administrative work of more than ordinary difficulty and responsibility requiring the exercise of a considerable amount of individual initiative and independent judgment in directing the business management of an agency engaged in a comprehensive program or activity; and to perform related work as required."

Assistant II's, it is difficult to objectively compare their entitlement, in Brown County's eyes, to reclassification as Administrative Assistant III's. Further, it is true that someone could have reviewed the same material and decided that Ms. Nellis, and not Mr. Torrey, qualified for reclassification. Similarly, the same person could have concluded that both were entitled to reclassification or that reclassification as to both should be denied. Also, Brown County and it's decisionmaker here, Mr. Jetzke, could have been in error in not finding that Ms. Nellis's duties qualified for reclassification. However, the simple fact that reclassification was denied, even if in error, does not compel the conclusion that it was denied *because* of gender discrimination.

I conclude that the plaintiff has failed to convince me by a preponderance of the evidence that her sex was a "but for" factor in the decision of Brown County not to reclassify her to Administrative Assistant III. The decision may have been erroneous, and from the testimony of Ms. Johnson it is easy to conclude that Ms. Nellis was a fine employee, but it was not discriminatory. Management decisions, even dumb ones, do not give rise to liability unless discrimination is present. I find none here. Accordingly, I find for the defendant and order the complaint dismissed." (emphasis original).

 In reviewing an action for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) (1976), the general rule is that "we are bound under Fed.R.Civ.P. 52(a) to accept [the district court's] findings of fact unless they are clearly erroneous." *Stewart v. General Motors Corp.,* 542 F.2d 445, 449 (7th

Cir.1976), *cert. denied,* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); Fed.R.Civ.P. 52(a). *Accord Garcia v. Rush-Presbyterian,* 660 F.2d 1217, 1220 (7th Cir.1981); *Sherkow v. State of Wisconsin,* 630 F.2d at 501–02. This court has stated, however, that:

"[T]he ultimate fact of discrimination, namely whether defendants' conduct constitutes a violation of Title VII, involves both a finding of fact and a conclusion of law. Consequently, we may make an independent examination of the ultimate fact of discrimination, though we are still bound by findings of subsidiary facts which are not clearly erroneous."

*DeLesstine v. Fort Wayne State Hospital and Training Center,* 682 F.2d 130, 133 (7th Cir.) *cert. denied,* —— U.S. ——, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982) (*"DeLesstine"*). *See also Stewart v. General Motors Corp.,* 542 F.2d at 449. In contrast, the United States Supreme Court, in *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (*"Pullman-Standard"*) held that under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h) (1976)[6] the question of "whether the differential impact of the seniority system reflected an intent to discriminate ... is a pure question of fact, subject to Rule 52(a)'s clearly erroneous standard." *Pullman-Standard,* 456 U.S. at 288, 102 S.Ct. at 1789. *See also Wattleton v. International Brotherhood of Boiler Makers,* 686 F.2d 586, 591 (7th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). At least one court has interpreted the Court's holding in *Pullman-Standard* to implicitly overrule the "ultimate fact" reasoning used by this court in *DeLesstine. See, e.g., Robino v. Norton,* 682 F.2d 192, 195 (8th Cir.1982). We note, however, that in *Pullman-Standard,* the Court went on to state that for purposes of

**6.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h) (1976) provides in pertinent part:

"Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of

employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin...."

determining whether a seniority system is discriminatory under 42 U.S.C. § 2000e–2(h), the issue of discriminatory intent "is not a question of law and not a mixed question of law and fact of the kind that in some cases may allow an appellate court to review the facts to see if they satisfy some legal concept of discriminatory intent." *Pullman-Standard,* 456 U.S. at 289, 102 S.Ct. at 1790. According to the Court, these cases that include a question of law and fact, and thereby allow the appellate court to independently review the facts, are cases where the district court's "findings clearly imply the application of standards of law." *Id.* at 286–87 n. 16, 102 S.Ct. at 1788–89 n. 16; *Baumgartner v. United States,* 322 U.S. 665, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525 (1944). In this instance, the district court was required to apply standards of law, namely the intermediate burdens of *McDonnell Douglas,* to its findings of fact in order to determine the ultimate question of whether "defendant intentionally discriminated against the plaintiff." Accordingly, in this fact situation we uphold the district court's findings of "subsidiary facts" that are not clearly erroneous and independently examine the "ultimate fact" of discrimination.[7] *Accord DeLesstine,* 682 F.2d at 133.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). *Accord Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). A review of the record fails to leave this court with a "definite and firm conviction" that the trial judge committed a mistake in finding that 1) Nellis and Torrey performed different tasks, thereby making

it difficult to compare their entitlement to reclassification as "AA III" and 2) Jetzke could have erred in not reclassifying Nellis, but that such error does not constitute sex-based employment discrimination. First, Nellis admitted that a position in the BCDSS clerical unit could not be equated with that of a welfare fraud investigator. Second, even if Jetzke did err in his subjective decision to deny Nellis' reclassification, such an error was based upon a legitimate and well-documented belief that Nellis did not have the "independent judgment" and "authority" required of an "AA III" to "initiate policies on an agency-wide basis." *See, e.g., Mason v. Continental Illinois National Bank,* 704 F.2d 361, 366 (7th Cir. 1983).

Upon our independent review of the record, we also agree with the trial judge's "ultimate" finding of fact that Brown County did not intentionally discriminate against Nellis. The reclassification process for employees of BCDSS was inherently subjective. According to this process, Jetzke had to apply his subjective observations from interviews and questionnaire answers to the objective criteria set forth in Wis.Adm.Code section PW–PA10, County Merit System Classification Plan. The evidence reveals that Jetzke strictly adhered to this procedure and supported his conclusion to deny Nellis' reclassification request with examples of Nellis' lack of autonomy and authority to "go in and initiate . . . policies and procedures on an agency-wide basis" as required by Wis.Adm.Code section PW–PA10, County Merit System Classification. On the other hand, Jetzke concluded that Torrey's work required "independent action and responsibility" thereby satisfying the statutory criteria for an "AA III" classification. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability

---

7. The United States Supreme Court noted in *Pullman-Standard:*

"[T]he ultimate 'fact' is the statutory, legally determinative consideration (here, inten-

tional discrimination) which is or is not satisfied by subsidiary facts admitted or found by the trier of fact. . . ." (parentheses original). 456 U.S. at 286 n. 16, 102 S.Ct. at 1789 n. 16.

...." *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096. *Accord Mason v. Continental Illinois National Bank,* 704 F.2d at 366. We agree with the trial judge that Brown County did not intentionally discriminate against Nellis, thus we hold that the trial judge did not err in dismissing appellant's complaint.

### III.

We affirm the judgment of the district court.