Christine **EPSTEIN**, Plaintiff-Appellant,

v.

**SECRETARY, UNITED STATES DEPARTMENT OF the TREASURY, Defendant-Appellee.**

**No. 83–1831.**

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1984.

Decided July 17, 1984.

See also 552 F.Supp. 436.

Sheila A. Reilly, Chicago, Ill., for plaintiff-appellant.

Mary Anne Mason, Asst. U.S. Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This is an appeal from a judgment of the district court entered after a bench trial that the Secretary of the Treasury did not violate plaintiff's rights under either Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. ("Title VII") or the

Equal Pay Act, 29 U.S.C. § 206(d)(1).[1] Upon a review of the record, we affirm.

## I.

Plaintiff Christine Epstein is a woman employed in the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, ("BATF"). She is the Administrative Officer of the Midwest Criminal Enforcement Region (located in Chicago), and as such she serves as the assistant to the Regional Director of Investigations (the "RDI"). The country is divided into four regions; each region has an RDI and an administrative officer. Three of the administrative officers are women while the fourth, the administrative officer in the Western Region, is a man named James Hester. The genesis of this case lies in the fact that in April, 1980, Hester was promoted to a higher government service grade and thus received a pay increase.[2] None of the female administrative officers, including the plaintiff, were similarly promoted.

Hester was promoted after the RDI for the Western Region, John Krogman, took two steps on Hester's behalf. First, he wrote a new job description for Hester's position in which he indicated that Hester's position involved substantial delegated decisionmaking discretion. BATF's Washington, D.C., Chief of Personnel, James Panagis, refused to promote Hester on the basis of the new job description alone because the description did not indicate that Hester had actually been delegated the discretion necessary to justify an upgrade. Thereafter, Krogman prepared an "impact statement" which was designed to illustrate that Hester's performance had changed his job so substantially that an upgrade was justified.[3] The impact statement specifically stated that Hester's experience and ability enabled the RDI to delegate to Hester significant discretionary authority. After receiving this impact statement, Panagis approved Hester's upgrade to GS–9.

After learning that Hester had been promoted, Robert Sanders, RDI for the Midwest Region, sought a promotion for plaintiff as well. Sanders prepared a new job description for plaintiff's position, which was, as the district court found, essentially a carbon copy of the new job description that had been prepared for Hester. Significantly, Sanders did not ever prepare an impact statement for plaintiff.

Plaintiff's new job description and Sanders' request for a reclassification to GS–9 were sent to the BATF personnel department of the Central Region in Cincinnati. It is unclear why Sanders sent the papers to Cincinnati since he testified that in the past all personnel actions for the Midwest Region had been handled in the Chicago office. In any event, the Cincinnati office approved the reclassification but the promotion did not go through because Panagis informed Sanders that the reclassification could only be performed in Chicago. Sanders then resubmitted the request to the Midwest Region Personnel Office in Chicago. The Chicago office performed what is called a "desk audit," in which a Midwest Region official interviewed Sanders and the plaintiff to determine the nature of the plaintiff's duties. This official concluded that 50 per cent of the plaintiff's work was at the GS–9 level but that much of that

---

1. At trial, plaintiff also presented an allegation that the Secretary's action was "arbitrary, capricious" and "an abuse of discretion" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). That claim is not renewed on appeal and we need not address it. However, in light of our finding on plaintiff's Title VII claim that the Secretary presented ample justification for the decision not to upgrade plaintiff's job classification, we doubt that the Secretary's action could be properly characterized as "arbitrary, capricious or an abuse of discretion."

2. All four administrative officers started out at grade GS–7. Hester was promoted to GS–9 after a new job description was prepared for his job and an "impact" statement was prepared which indicated that he had accepted significant responsibilities in addition to those initially contemplated for his job.

3. Upgrades on this basis are provided for in a United States Civil Service Commission Handbook that is in the record.

work was duplicative of work performed by other BATF departments.

James Thompson, Chief of BATF's Management Branch in Washington, denied plaintiff's promotion in February, 1981.[4] Thompson's expressed reasons for the denial were that, in his view, much of the plaintiff's work was duplicative and that, in any event, plaintiff had not been delegated enough independent authority to justify a GS–9 grade.

## II. Equal Pay Act

■ A prima facie case of a violation of the Equal Pay Act is analytically quite simple.[5] As the district court noted, the plaintiff's initial burden is to prove that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). *See EEOC v. Mercy Hospital and Medical Center*, 709 F.2d 1195, 1197 (7th Cir.1983) (applying *Corning Glass* prima facie case). While the work performed by the two employees (or groups of employees) need not be identical, it must be "substantially equal." *EEOC v. Mercy Hospital and Medical Center*, 709 F.2d at 1197. *See also Corning Glass Works v. Brennan*, 417 U.S. at 203 n. 24, 94 S.Ct. at 2232 n. 24. If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to show that any pay differential is justified under one of the Equal Pay Act's four exemptions. 29 U.S.C. § 206(d)(1). These exemptions are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]" *Id.* Because we affirm the district court's finding that a prima facie case has not been demonstrated, we have no opportunity to address the applicability of the exemptions to this case.

■ The district court found that plaintiff failed to prove that the work she did was "substantially equal" to that done by Hester. The district court pointed out that job descriptions are not determinative of equal work, but, rather, as we noted in *Mercy Hospital*, the court must weigh the nature of the *actual duties* performed by the two employees. 709 F.2d at 1197. For plaintiff to prevail, she would have had to show that the two jobs required equal skill, equal effort and equal responsibility. *Christopher v. Iowa*, 559 F.2d 1135, 1138 n. 14 (8th Cir.1977).[6] Thus, even though the two jobs had almost identical job descriptions, the district court was not required to find a prima facie Equal Pay Act violation.

■ We must review the district court's finding that the two jobs did not involve equal work under the clearly erroneous standard of review, *Mercy Hospital*, 709

---

4. It was necessary to seek approval from Washington for both Hester's and plaintiff's reclassification apparently because of the effect they might have on the other Administrative Officers.

5. The Equal Pay Act, 29 U.S.C. § 206(d)(1), provides:

   "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where

   such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

6. We recognize that job descriptions may, in some instances, be highly probative of equal work because one would expect that actual responsibilities would, to some extent, conform to a job description. Similar job descriptions alone, however, do not require a finding of substantial equality of jobs under the Equal Pay Act.

F.2d at 1198. Thus, we will not reverse the district court unless, after reviewing all of the evidence, we are "left with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1945). Upon a review of the record in this case, we find ample support for the district court's conclusion that plaintiff failed to prove a prima facie case.

■ Plaintiff relies heavily on the job descriptions for her argument that the two jobs involved equal work. As is evident from the discussion of job descriptions, *supra*, that reliance is misplaced. Plaintiff also attempts to impugn the defendant's position by attacking the failure of Krogman, Hester's supervisor, to testify at trial about what Hester's duties were. Plaintiff would, it seems, have us infer equal work from the defendant's failure to prove otherwise. This line of argument ignores the elementary fact that the burden for proving the prima facie case is on the plaintiff. The plaintiff has not pointed to any record evidence, except the job descriptions, which would tend to show equal work, and on our review of the record we agree with the district court that the record is devoid of any such evidence. Plaintiff's own testimony reveals that she possessed little knowledge of what Hester actually did and that she was delegated little, if any, decision-making authority. Epstein TR 27, 42. On the other hand, Hester's impact statement indicated that he had been, and would in the future continue to be, delegated substantial independent authority. Sanders, plaintiff's supervisor, could have, but did not, file an impact statement on plaintiff's behalf.[7] On this record, the district court was justified in finding that plaintiff had not established a prima facie case.[8]

### III. ˙ Title VII

■ We faced a remarkably similar Title VII issue in *Nellis v. Brown County*, 722 F.2d 853 (7th Cir.1983). In that case, Nellis, a female, claimed that she was entitled to a reclassification of her job after a similar situated male employee was granted an upgrade. In *Nellis*, we recognized the Supreme Court's directive that our ultimate task in Title VII cases is to determine whether the plaintiff has proven that the defendant discriminated against her. 722 F.2d at 856–57. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

The district court found that plaintiff in this case established her prima facie case because she proved that she was generally qualified for an upgrade and that a similarly situated male was given an upgrade.[9] *See Nellis*, 722 F.2d at 857. *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The burden then shifted to BATF to articulate a legitimate, nondiscriminatory reason for the failure to upgrade plaintiff. *Id.; Aikens*, 103 S.Ct. at 1481; *Nellis*, 722 F.2d at 857. This reason, of course, would have to justify the different treatment accorded Hester and plaintiff. *Cf. Nellis*, 722 F.2d at 860–61. If the defendant meets this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

---

**7.** No explanation of this failure has been offered.

**8.** In light of our finding that plaintiff has not established a prima facie case, we find it unnecessary to address whether defendant's evidence would have rebutted this prima facie case.

**9.** In particular, the district court found that the plaintiff was qualified for an upgrade to GS–9, . that she was performing substantial GS–9 activities, that the job descriptions for her job and Hester's jobs were identical and that, of the four administrative officers, only the one male received an upgrade. ˈ

The defendant argues that plaintiff failed to establish a prima facie case. The finding that the parties were not performing equal work for Equal Pay Act purposes would appear to support defendant's argument in this regard. However, in light of our affirmance of the finding of no discrimination, we find it unnecessary to rule on whether a prima facie case has been established.

reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. *See also Aikens,* 103 S.Ct. at 1481; *Nellis,* 722 F.2d at 856.

The defendant articulated a nondiscriminatory reason in this case which the district court ultimately accepted. The defendant presented testimonial and documentary evidence which indicated that Hester was promoted because he had transformed his job, as indicated in his impact statement, from one involving only limited authority into one involving substantial independent decisionmaking authority. The desk audit of plaintiff's job did not reveal similar authority and, although the audit indicated that the plaintiff was doing a substantial amount of GS–9 work, much of that work was found by the auditor to be duplicative.[10] In fact, because he found so much of plaintiff's work to be duplicative, the desk auditor actually recommended that plaintiff's job be abolished.

Plaintiff then attempted to impugn the defendant's explanation for the disparity in government grade and pay. The district court determined, after hearing all of the evidence, that plaintiff did not meet her burden of proving intentional discrimination. We recognized in *Nellis* that we must "independently examine" the "ultimate fact of discrimination." 722 F.2d at 860. Our review of subsidiary factual determinations is governed, however, by the clearly erroneous test. *Id.*

The district court determined that Hester was promoted because of the information contained in the impact statement that was prepared on his behalf. The district court also determined that the plaintiff's upgrade was denied because the GS–9 work plaintiff was doing was duplicative of work already being performed in the Chicago office and because plaintiff had not been delegated enough independent authority to justify an upgrade to GS–9. Plaintiff's main arguments on appeal are that her job description, which was the same as Hester's, shows that she too had substantial independent authority and that Panagis' actions show he acted with discriminatory intent. In particular, plaintiff argues that the rerouting of her reclassification request from Cincinnati to Chicago and the desk auditor's recommendation that plaintiff's position be abolished are strong indications of discriminatory intent. Plaintiff also called an expert witness who testified that the impact statement filed on Hester's behalf was insufficient, in his opinion, to justify an upgrade.

We must reject each of plaintiff's attacks on the district court's findings. The plaintiff's reliance on the similar job descriptions is misplaced because it is undisputed that Panagis refused to approve an upgrade based on Hester's new job description alone. Rather, Hester's supervisor was required to submit an impact statement, and plaintiff's supervisor did not do the same for her. The rerouting of the reclassification request does not appear at all suspicious to us since plaintiff's own supervisor testified that her reclassification request was the only personnel-related request he had ever sent out of Chicago. Further, plaintiff has not rebutted the desk auditor's finding that her work was duplicative, so we find it difficult to perceive why his recommendation that her job be abolished is indicative of discriminatory intent. Finally, the district judge, who heard all of the relevant testimony, found that the expert's testimony did not impugn the believability of the defendant's witness who testified that the impact statement was important to the decision to upgrade Hester to GS–9.[11] Even if the defendant was mistaken in its assessment of the qualifications of the parties, we could not, on

---

**10.** No desk audit was performed on Hester's job. Plaintiff claims that this is an example of unequal treatment. Panagis explained that no desk audit of Hester was necessary because the desired information was contained in his impact statement. Nothing plaintiff has pointed to casts doubt on this explanation.

**11.** Plaintiff's own testimony indicates that she was not delegated substantial independent authority. Rather, it appears that she usually made recommendations to her supervisor.

this record, reverse the district court's finding of no discriminatory intent.[12] *See Nellis,* 722 F.2d at 860–61. For Title VII purposes, the differences in the relative amounts of independent responsibility delegated to plaintiff and Hester provided ample justification for the different decisions regarding reclassification.

## IV.

We have considered all of plaintiff's arguments on appeal and find them to be without merit. Therefore, the decision of the district court is affirmed.

12. Much of plaintiff's brief is devoted to arguing that we should draw different inferences from the evidence than the district court drew. We recognize the difficulty inherent in proving discriminatory motive, but we are not convinced that we should draw the inferences that plaintiff desires. The district court, after hearing the witnesses testify, was in a much better position than we are to weigh the evidence for indications of discriminatory intent from facts which could support inferences either way.