Anna E. **PARKER**, Plaintiff-Appellant,

v.

The **BOARD OF SCHOOL COMMIS-SIONERS OF the CITY OF INDI-ANAPOLIS, Defendant-Appellee.**

No. 83–1616.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1983.

Decided March 13, 1984.

Belle T. Choate, Choate, Visher & Haith, Indianapolis, Ind., for plaintiff-appellant.

James S. Cunning, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellee.

Before PELL and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

COFFEY, Circuit Judge.

The plaintiff-appellant, Anna E. Parker, brought this action alleging that the Board of School Commissioners of the City of Indianapolis, the defendant-appellee, failed to hire her for a vice-principal position because of her sex in violation of Title VII, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. The district court, 558 F.Supp. 680 (D.C.Ind.1983), entered judgment for the defendants. We AFFIRM.

I.

In May of 1980 the Indianapolis Public School System ("IPS") gave notice that three positions were available for a secondary school vice-principal. Thirty-six people applied for the positions and the plaintiff was one of eight females in the group of twenty-six who were selected for an initial interview after a screening of the applications. The selection committee ranked and rated each candidate based upon specified criteria and placed the plaintiff in the tenth position out of twenty-six candidates while ranking three other female applicants above her. At the time of her application the plaintiff was employed by the IPS at Arsenal Technical High School ("Tech"), and had some forty-three years' experience in education. The plaintiff also had a master's degree and had completed the additional requirement of thirty graduate hours.[1] The plaintiff was without supervi-

---

[*] The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The IPS listed the following qualifications in the vacancy notice:

"*Qualifications:*

"Master's Degree plus thirty graduate hours required. A minimum of five years experi-

sory experience within the school system and had never applied for a supervisory position within the system before 1980.

Based upon the selection committee's rankings, an independent review of the candidate's personnel files and a review by the IPS Affirmative Action Officer, the School Superintendent recommended three candidates to the School Board. The School Board accepted these recommendations and hired two men and a woman, each of whom had been ranked higher than the plaintiff, for the three available vice-principal positions.[2] Joseph McGeehan, the person hired for the position at Tech High School, was ranked first by the selection committee on the basis of his prior experience and qualifications. The plaintiff challenges the district court's finding of no discrimination and the court's denial of her request to allow one of her former students to testify as an expert witness.

## II.

"The 'factual inquiry' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff.'" *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (*quoting Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). The plaintiff had the burden of persuading the district court that the IPS intentionally discriminated in not appointing her to the vice-principal position at Tech. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. A three-step analysis, initially set forth in *McDonnell Doug-*

*las Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is used to determine whether a plaintiff has met this burden:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (citations omitted) (*quoting McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25). *See also United States Postal Service Board of Governors v. Aikens*, 103 S.Ct. at 1481; *Nellis v. Brown County*, 722 F.2d 853, 856 (7th Cir.1983); *Lee v. National Can Corp.*, 699 F.2d 932, 935–37 (7th Cir.1983).

After the plaintiff presented her case-in-chief,[3] the defendant, consistent with its burden to articulate a legitimate, non-discriminatory reason for not hiring the plaintiff, explained that it selected Joseph McGeehan for the Tech vice-principal position because of his superior qualifications. The evidence presented by IPS established that Joseph McGeehan's qualifications were far superior to those of the plaintiff

ence in education. Experience as a supervisor or department head in a subject area preferred. Practical experience in business operations and knowledge of budgetary procedures desirable."

2. It should be pointed out that the plaintiff in effect limited her opportunities since she limited her application specifically to the vacancy at Tech.

3. We note that the district court did not expressly rule whether the plaintiff proved a *prima facie* case. However, the district court, "assuming *arguendo*" that the plaintiff had proved a *prima facie* case, proceeded as if the plaintiff

had made her *prima facie* case and required IPS to introduce proof as to why Ms. Parker was not selected. The Supreme Court has recently ruled that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *United States Postal Service Board of Governors v. Aikens*, 103 S.Ct. at 1482. *See also Nellis v. Brown County*, 722 F.2d at 857. Since the district court required defendant to articulate a non-discriminatory reason for not hiring the plaintiff, it is not relevant whether the plaintiff did in fact prove a *prima facie* case.

as McGeehan had not only seven-years of supervisory experience within IPS including significant budgetary responsibility but he also had completed the course work for a Ph.D. in Education with an emphasis in curriculum. Furthermore, he possessed certification beyond that required for the vice-principal position, an Indiana Superintendent Provisional License. The IPS, in support of its position that McGeehan was hired for non-discriminatory reasons, also provided the court with a detailed explanation of the procedures used to fill the vice-principal vacancies and statistics showing that the percentage of females it employed who met the minimum qualifications for vice-principal and administrative positions almost equaled the percentage of females actually holding those positions.

Pursuant to the *McDonnell Douglas* analysis, the plaintiff had the obligation and the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [for hiring Joseph McGeehan] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The district court ruled that the plaintiff failed to discredit the IPS's explanation for hiring Joseph McGeehan. The court further made a detailed finding that the plaintiff produced no evidence that the IPS's hiring of Joseph McGeehan on the basis of his qualifications was in fact a pretext for sex discrimination. We are in accord. Despite the plaintiff's commendable achievements as an educator, the IPS was justified in finding Joseph McGeehan as the more qualified, and hiring him for the vice-principal position at Tech. His educational qualifications were far superior to those of the plaintiff and his expertise was in curriculum development which is especially significant because the IPS considered Arsenal Technical High School deficient in the area of curriculum development and was seeking someone qualified to remedy this deficiency. McGeehan also had significant supervisory and budgetary experience, experience the IPS stated was "preferable" and "desirable," as set forth in their job application

notice. It is more than evident that the plaintiff was not as qualified as McGeehan in that she lacked not only budgetary and supervisory experience but also was without comparable educational qualifications. The plaintiff had considerable experience with the "Sight-Saving" Program at Tech, but this position did not provide her with the desired supervisory experience since she did not directly supervise any subordinate employees. While the plaintiff had the minimum education and teaching experience specified by the IPS, "[a] desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate, and common reason on which to base a hiring decision." *Holder v. Old Ben Coal Co.*, 618 F.2d 1198, 1202 (7th Cir. 1980). This is especially true when, as in the case before us, the opening is for a managerial, rather than an unskilled, position. *See Mason v. Continental Ill. Nat. Bank*, 704 F.2d 361, 365 (7th Cir.1983) (42 U.S.C. § 1981 employment discrimination case).

The plaintiff repeats the same arguments before us made before the district court, namely that the IPS selected Joseph McGeehan because he was a male, that the IPS created a position to fit his qualifications, and that the IPS improperly based their evaluation of her qualifications on subjective criteria. The district court did not find these arguments convincing nor do we. "In reviewing an action for discrimination under Title VII … the general rule is that 'we are bound under Fed.R.Civ.P. 52(a) to accept [the district court's] findings of fact unless they are clearly erroneous.'" *Nellis v. Brown County*, 722 F.2d at 859 (*quoting Stewart v. General Motors Corp.*, 542 F.2d 445, 449 (7th Cir.1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977)). We hold that the findings of the district court have ample support in the record and further that the findings of the trial court are not clearly erroneous. The plaintiff, however, urges us to make "an independent determination" regarding the "ultimate fact" of whether the IPS discriminated against Ms. Parker.

*See DeLesstine v. Fort Wayne State Hospital and Training Center,* 682 F.2d 130, 133 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). Based upon our review of the record, we also hold that the trial court's "ultimate" finding of fact that the IPS did not intentionally discriminate against the plaintiff was proper and has more than ample support in the record.

■ We hold that the district court properly denied the plaintiff's Title VII cause of action as the plaintiff failed to prove that she was intentionally discriminated against, a prerequisite to a successful Title VII case. The plaintiff's § 1983 claim must also fail because discriminatory intent is a prerequisite to a § 1983 *prima facie* case. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

### III.

■ The plaintiff also argues that the district court erroneously relied on the statistical evidence presented by the IPS to rebut the plaintiff's *prima facie* case of sex discrimination. The statistical evidence presented by the IPS showed that its hiring of women for supervisory positions was non-discriminatory. While it is correct that an employer's showing of a balanced minority workforce cannot rebut a finding of illegal sex discrimination, *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 579, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978), the workforce statistics presented by the IPS were not used by the district court for this purpose. The court merely presented these statistics in its decision to emphasize the futility of the plaintiff's claim after finding specifically that the plaintiff had failed to produce *any* evidence of illegal sex discrimination. Workforce statistics can be relevant to the issue of discriminatory intent and can be used by a court for that purpose. *See Furnco,* 438 U.S. at 579–80, 98 S.Ct. at 2950–51; *Connecticut v. Teal,* 457 U.S. 440, 454, 102 S.Ct. 2525, 2535, 73 L.Ed.2d 130 (1982). The court's use of the statistical evidence presented by the IPS

was proper since the evidence was not used to rebut a finding of discrimination.

■ The plaintiff also contends that the district court committed reversible error by failing to "strictly scrutinize" the IPS's subjective selection criteria since the IPS had a history of sex discrimination and the fact that she was interviewed by males created an inference of discrimination. This novel argument is without merit since the plaintiff has failed to demonstrate that the IPS has a history of discrimination and we cannot infer that the plaintiff was discriminated against from the fact she was interviewed by males.

■ Finally, the plaintiff argues that the district court erred in failing to evaluate the qualifications of the plaintiff's expert witness, Dr. Dinnsen, a professor at Indiana University, and in not allowing him to testify. The plaintiff initially sought to have this witness testify during her case-in-chief and after the court denied this request, the plaintiff later offered this witness's testimony in rebuttal of the defendants' case, a request the court also denied. Dr. Dinnsen's testimony was offered to show that Ms. Parker's duties with the "Sight-Saving" Program, which Dr. Dinnsen was aware of because he had been a former student in the program, provided the plaintiff with the necessary supervisory qualifications to assume vice-principal responsibilities. The plaintiff argued that Dr. Dinnsen was in the unique position as both an educator and former student to evaluate and analyze the plaintiff's responsibilities in the "Sight-Saving" Program. In its rulings to bar Dr. Dinnsen's testimony, the court reasoned that the testimony of former students involved in the "Sight-Saving" Program was not relevant to the personnel decision being litigated.

"This court has consistently held that the district court has broad discretion to assess the admissibility of expert testimony." *Spesco v. General Elec. Co.,* 719 F.2d 233, 238 (7th Cir.1983) (*citing Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226 (7th Cir.1982)). "[T]he district court's ruling on the admissibility of expert testimony

will not be overturned in the absence of a clear showing of abuse of discretion." *Id.* Despite the plaintiff's argument to the contrary, our review of the record reveals that the district court adequately assessed the qualifications of Dr. Dinnsen to testify as an expert witness. Based upon the plaintiff's offer of proof, the court determined that Dr. Dinnsen's testimony would not be relevant to the case. Experts are allowed to testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702. We agree with the district court's ruling that Dr. Dinnsen's testimony was neither relevant nor required in the determination of whether or not the plaintiff was qualified for the vice-principal position at Tech High School. None of the plaintiff's arguments demonstrate that the district court's decision was an abuse of discretion. We therefore hold that the court's ruling on the admissibility of Dr. Dinnsen's testimony was not an abuse of discretion.

### IV.

Ms. Parker clearly has had a distinguished career as an educator and has been a dedicated employee of the IPS and Arsenal Technical High School. Our task, however, is not to assess the "wisdom" of employment decisions but rather to determine whether an employer's selection procedures comport with the law. Based upon the record presented to us for review we are compelled to hold that the procedures followed by the IPS to hire a new vice-principal for Tech High School did comport with the law. The decision of the district court is AFFIRMED.