Irving SUSON, Plaintiff-Appellant,

v.

ZENITH RADIO CORPORATION, a Delaware corporation, Defendant-Appellee.

No. 84–2122.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1985.

Decided May 31, 1985.

Irving Suson, pro se.

John J. VanZeyl, Glenview, Ill., for defendant-appellee.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This is an action for injunctive relief and damages based on alleged religious discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* After a four-day trial the district court entered judgment for the defendant, and plaintiff appeals.

I

On July 10, 1969, plaintiff-appellant Irving Suson was discharged from Zenith Ra-

dio Corporation. In August of that same year he filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that he was discharged because of his Jewish religion. The Commission determined in October of 1973 that the charge was without foundation and issued a "Notice of Right to Sue."

Plaintiff brought this action in district court on January 18, 1974, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and it finally went to trial on May 1, 1984. Although we are familiar with the notion that large corporations may not be above using delaying tactics in an effort to exhaust the resources of the small litigant, that does not appear to have been the case here. Discovery was closed time and again, only to be reopened at plaintiff's request. He filed an unending series of interrogatories and requests for documents and depositions—literally unending, since he was still requesting additional discovery while the district judge was making his findings of fact and conclusions of law. At the same time, he resisted efforts of the court to have him produce such things as a list of witnesses he would call; until the end of the trial it was uncertain whether he had decided on his witnesses.

Plaintiff has already been before this court, *Irving Suson v. Honorable Hubert L. Will*, No. 81–1056 (May 11, 1981), in an attempt to get a Writ of Mandamus reviewing the district court's denial of his demand for further discovery; we denied that petition. He attempted to have the magistrate assigned to oversee discovery replaced; he attempted to have the district judge recuse himself. He has already been to the United States Supreme Court once with a Petition for a Writ of Certiorari.

Because Suson has conducted these proceedings on his own behalf (*pro se*), the district court has gone to great lengths to accommodate him. It is unlikely that anyone represented by counsel would have been permitted to use up the time of the federal courts in the way that Suson has been permitted to use it up. Appointment of counsel was discussed in 1974, but Su-

son apparently refused to file an affidavit concerning his financial status. It appears from the record that in March, 1976, an attorney agreed to represent Suson, only to leave the case three months later.

The trial date was repeatedly pushed back. The case finally came to trial in 1984, and it lasted four days. To make his own case, Suson called and questioned a number of Zenith's witnesses. The interrogation of each witness was apparently in this manner: Suson would leaf through the pages of the witness's prior deposition until he found a line of questioning he believed relevant. This might take five or ten minutes, during which time the courtroom was in silence. When he arrived at something he believed to be of interest, he would question the witness about it. The district judge would then beseech him to show the relevance, which he invariably could not do. He would argue until the district judge allowed him to continue, and then he would resume questioning the witness. When the witness had answered, he would read into the record the witness's prior answers at deposition. Most often there was very little variation between what the witness said at trial and what he had said earlier, but Suson's conclusion was that he had shown the witnesses to be untruthful. A great deal of time was spent in arguing about just what Suson was attempting to do. Although the district judge indicated that if *Suson* wanted to testify, he would have to do it when he took the stand, Suson never did take the stand to testify.

When Suson had finished with his witnesses—or rather when the district judge concluded that he could not allow Suson to continue in the same way any longer—he maintained that he had made a prima facie case. The district judge did not decide one way or the other on the question of the prima facie case, but because Suson was proceeding *pro se* he allowed the case to continue, asking Zenith to rebut *as if* Suson had made a prima facie case. Zenith put on a number of witnesses and questioned them briefly about the reasons for Suson's dismissal.

When Zenith had finished with each witness, Suson began a lengthy cross-examination of that witness, proceeding in much the same manner he had proceeded during his own direct examination of witnesses. More or less by brute force the district judge brought the whole thing to an end, issuing findings of fact and conclusions of law on the evening of the fourth day. He found that Suson had not made a prima facie case; but he also found that even if he *had* made a prima facie case, he had not shown the reason Zenith gave for the dismissal to be pretextual.

It is difficult to avoid imputing bad or disordered motives to Suson. The delays he subjected the court to may have been merely a consequence of the fact that he had no professional representation. But time and again during the trial he accused the court of not giving him time to produce evidence that he clearly could not or would not produce, and he repeatedly claimed to have documents that would show this or that, although the documents never surfaced. At one point, when the court's patience was flagging and dismissal seemed imminent, Suson claimed to have a document in which Zenith listed all its Jewish employees; the document was never produced, in spite of great interest on the part of the judge and the defendant, and eventually it was forgotten. The record suggests that Suson conducted himself in a similar manner through ten years of discovery.

## II

The court below found that in 1968 Suson's supervisors had become dissatisfied with his work as an engineer in the Military Engineering Division. They asked Vito Brugliera, supervisor of a project known as the SKAMP program, whether he could find a place for him. The court found that Brugliera, knowing that Suson was Jewish, agreed to find a place for him.

Suson was assigned to build a circuit board; the board, constructed according to Suson's design, did not work properly, the court found, and Suson was not available to help with the debugging of the board. There was also a report for the federal government that Suson was assigned to write; the report was badly written and had to be redrafted from scratch.

Sometime in the first quarter of 1969, according to the court, Brugliera notified Suson that he should look for work elsewhere.[1] The court found that Brugliera considered Suson a competent technician but not a good engineer, and that he considered him to be unable to work with others on projects.

Suson evidently made no move to find work elsewhere. In June, 1969, it came to Brugliera's attention that Suson was removing and copying large quantities of classified material. Brugliera asked Suson to return all the classified material in his locker. The court found that when Suson refused, Brugliera fired him.

The court concluded that Suson was not discharged because of his Jewish religion, and that there was no pattern or practice at Zenith of discharging people because of their Jewish religion.

## III

There is no reason, in these circumstances, to try to determine whether plaintiff has actually made a prima facie case of discrimination. *See U.S. Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). Defendant has responded with a legitimate non-discriminatory reason for the discharge, and the district court found that plaintiff had failed to show that the reason given was merely pretextual. We do not see that this finding is clearly erroneous. *Parker v. Bd. of School Commissioners,* 729 F.2d 524, 527 (7th Cir.1984).

---

1. Although it was not mentioned in the court's findings, Brugliera twice testified at trial, once as a witness for Suson and once as a witness for Zenith, that Suson had replied that he could make trouble for Brugliera, and that the reason for his discharge, should he be discharged, would be that he was Jewish.

Zenith presented evidence that it let Suson go because of a number of incidents culminating in Suson's refusal to clear his locker of classified material. Suson could have countered this defense in one of several ways: He could have shown that others were not fired for similar reasons, or he could have shown that the reason was simply not worthy of belief. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973). The district judge found that Suson had not shown that the events Zenith relies on did not occur, and that he had not shown that they were not the reasons for his discharge. From our examination of the transcript, we do not see that the district judge was mistaken; Suson did not even undertake to show these things. Nor did he argue, or attempt to show, that others involved in similar incidents had not been similarly treated. He made some effort to say something about the treatment of Jews in general, in his job category, in his department. But the four (or five or six—the list varied) persons on the list were not all discharged, and Suson has not even attempted to show that all persons on the list were Jewish; certainly none of them have joined him in this suit. The district judge found no evidence of a pattern or practice of discrimination, and there is simply nothing in the record that would lead us to think he was mistaken. Having combed the transcript, we find nothing else that would suggest an animus toward those who shared Suson's religion; we find nothing to suggest that Suson was fired for any but the reasons given by Zenith. We repeat that the bur-

den is on the plaintiff to show that these reasons were pretextual, and the plaintiff has failed.

## IV

The plaintiff raises a number of other issues that can be disposed of more or less summarily. For one thing, the district court made adequate findings of fact and conclusions of law. FED.R.CIV.P. 52(a). Although they were made orally, they were made at the end of trial and were clearly identified by the district judge as findings and conclusions. Plaintiff also complains that the district court denied him the right to testify in his own case, and that the district court prevented him from questioning witnesses. These allegations are true; the district court did decide after a certain point that the examination of witnesses would have to end, and when, during the district judge's recital of his findings of fact, Suson insisted on testifying, the judge refused. Decisions such as these are within a trial judge's discretion, *United States v. Pizarro*, 717 F.2d 336, 347 (7th Cir.1983), and from what we are able to determine, to have decided otherwise would itself have been an abuse of discretion. Suson had the opportunity to testify during his case in chief, but in spite of comments from the judge about his testifying, he neglected to do so. Suson was clearly prepared to carry on the trial for weeks, and we see no reason why the district judge was obliged to let him do it.

Suson has had his day in court. He has had ten years of it. As far as we are concerned, Suson's action against Zenith is at an end.[2]

**2.** The appellant's brief was submitted with parts missing, and no reply brief was submitted before oral argument. The missing parts of the main brief and the reply brief have since been submitted. Two new arguments have been added to those in the original brief, and each can be dealt with summarily. Suson objects that the trial judge would not permit him discovery of certain work products because the work product privilege "cannot be waived." What the trial judge held in fact was that Suson had not made a showing of substantial need as required by Rule 26(b)(3) of the FEDERAL RULES OF CIVIL PROCE-

DURE. In his ruling the judge reasoned that everything that could be of use to Suson in the material he sought was easily available elsewhere. Suson has not given us any reason to believe that that is not so.

Suson also argues that the district judge was wrong not to recuse himself for reasons of prejudice. Our perusal of the record shows no basis for an assertion of such prejudice, and Suson does not even directly allege that such prejudice exists. The district judge is, of course, obligated not to recuse himself without reason

The judgment of the district court is AFFIRMED.

just as he is obligated to recuse himself when there is reason. *United States v. Baskes,* 687 F.2d 165, 170 (7th Cir.1981).