Kathy VAN HOUDNOS, Plaintiff,

v.

Robert EVANS, et al., Defendants.

No. 81–3304.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 21, 1986.

Mary Lee Leahy, Springfield, Ill., for plaintiff.

Martin Haxel, Asst. Atty. Gen., John Keith and John Mehlick, Springfield, Ill., for defendants.

## OPINION AND ORDER

MILLS, District Judge:

Sex discrimination employment case.

Judgment directed for the Defendant—notwithstanding the jury's verdict for the Plaintiff.

Plaintiff brought this cause of action alleging that six employees of the Illinois State Museum acted and conspired to deny her employment because of her sex in contravention of 42 U.S.C. §§ 1983 and 1985. Prior to trial, the Court denied Defendants' joint motion for summary judgment on the ground that Plaintiff's allegations, if supported by the evidence, might establish liability under the civil rights statutes. The Court, however, expressed to counsel its concern with the element of causation necessary in Plaintiff's proof.

At the close of the Plaintiff's case, the Court directed a verdict for five of the six Defendants on the ground that Plaintiff had manifestly failed to carry her burden of proof with respect to these Defendants on the crucial elements of intent and causation. These same elements were not yet established as to the remaining Defendant but the Court determined that a more fully developed record—including Plaintiff's rebuttal of the Defendant's case—might elicit needed evidence.

The necessary evidence was not, however, forthcoming. At the close of all the evidence, the Court reserved a decision on the remaining Defendant's motion for a directed verdict. Fed.R.Civ.P. 50. Upon receipt of the jury's decision for the Plaintiff, the Court directed a judgment for the Defendant, the jury's verdict notwithstanding.

## STANDARD

The standard for entering a directed verdict and a judgment notwithstanding the jury's verdict is the same. *See Sparrow v. Yellow Cab Co.*, 273 F.2d 1 (7th Cir.1960); *Shaw v. Edward Hines Lumber Co.*, 249 F.2d 434 (7th Cir.1957). In considering such motions, the Court must determine "whether the evidence presented, combined with all reasonable inferences permissably drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985).

The Court should not make credibility determinations. *Brady v. Southern Railroad*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Sonnentheil v. Christian Moerlain Brewing Co.*, 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492 (1899). Only the non-moving party's evidence and the moving party's uncontradicted and unimpeached evidence should be considered. *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), citing *Brunner v. Minneapolis, St. Paul & Sault Ste. Marie Railroad*, 240 F.2d 608

(7th Cir.1957); *see also C.A. Wright and A.R. Miller,* Federal Practice and Procedure: Civil § 2524, p. 573 (1971).

## FACTS

In accordance with these guiding principles, the Court accepts as established the following relevant evidence offered or unchallenged by Plaintiff:

Plaintiff Van Houdnos is a woman. She applied for the position of Art Gallery and Collections Assistant at the Illinois State Museum. Prior to her application, she had performed the duties required of a collections assistant while employed as a Curatorial Assistant "intern." Ultimately, a male, Mr. Lawrence Rhoads, received the Collections Assistant position.

The position the Plaintiff sought was under the direct supervision of Defendant, Robert Evans, the museum's Curator of Art. Evans stated to the Plaintiff that he preferred to have a man fill the Collections Assistant position. Evans was the official who had earlier approved the hiring of Plaintiff as a Curatorial Assistant "intern" under a CETA grant and had approved of her work in the intern position.

In the spring of 1979, Evans held a meeting of the museum's department staff. During the course of the meeting, Evans publicly stated his preference that a man be named Curatorial Assistant. It is reasonable to infer that those Defendants who attended this meeting knew of Evans' preference. Evans' uncontradicted testimony establishes that all the members of the art department had input into the content of the job questionnaire, but that he probably prepared it. The application forms, however, contained nothing discriminatory. The only reasonable inference that may be drawn from this fact is that Evans' preference for a man to fill the position did not influence the drafting of the application forms.

In light of Mr. Evans' expressed preference for a man as Collections Assistant, Plaintiff sought and received assurances from the museum's director, Defendant Bruce McMillan, that she would receive fair consideration for the open position.

Subsequent to and—it may be inferred—at least partially in response to Plaintiff's concern that she would not receive fair consideration for the assistantship, the museum administration convened an *ad hoc* screening committee composed of three experienced female museum employees: Defendants Maureen McKenna, Judi Johnson, and Susan Pickel-Hedrick. Each member of the screening committee was charged with reviewing individually each of the 26 applications eventually received and with ranking the applicants. Evans served as chairman of the screening committee but did not review or rank any of the candidates. Defendant Hedrick, the museum's assistant director and Evans' immediate supervisor, served as an ex-officio member of the committee; he monitored the applications and the committee's review but took no part in the initial individual rankings.

Each committee member's individual reviews and recommendations were based on specific criteria articulated at trial: age, experience, education, and background. The committee members' individual rankings listed women among the top contenders. The only reasonable inference to be drawn from this inclusion of women among the top candidates is that the members of the screening committee did not exclude women from consideration because of their sex.

After each member of the screening committee had ranked all of the applications, Evans tabulated the rankings and compiled a list of the six top candidates for final consideration. The first three candidates on the final list were male; the second three candidates were female. Plaintiff was not one of the finalists. Mr. Lawrence Rhoads, the person hired, received the highest ranking. The qualifications of the six finalists clearly exceeded Plaintiff's.

Evans forwarded his compilation of rankings to his superior, Assistant Director Basil Hedrick. Hedrick compared Evans' compilation of the screening committee's rankings to the committee members' evalu-

ations, and to his own evaluation of the twenty-six applications, and concurred in the compiled rankings.

The top three candidates were then scheduled for interviews; the second three candidates were held in reserve for additional interviews should the first three candidates prove unacceptable. The interviews were conducted by various members of the screening committee who were available at the time of each interview. After the first set of three interviews, the screening committee recommended Mr. Rhoads' selection.

Evans reported the recommendation to Mr. Hedrick who approved the recommendation and in turn forwarded it to Director McMillan. Director McMillan approved the recommendation and submitted it to the museum's Board of Directors who ultimately confirmed the appointment. (Assistant Director Hedrick, Director McMillan, and the Board all had independent authority to reject the consensus candidate.)

These facts do not establish that the Plaintiff suffered from discrimination based on her sex.

### LAW [1]

#### *42 U.S.C. § 1983*

In order to establish liability for sex discrimination in violation of 42 U.S.C. § 1983, a plaintiff must allege with clarity and prove by a preponderance of the evidence (1) that "the conduct complained of was committed by a person acting under color of state law, and (2) [that] this conduct deprived a person of rights, privilege, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *see, e.g. Coleman v. Frantz*, 754 F.2d 719, 722 (7th Cir.1985).

The parties do not dispute that all of the Defendants are state employees who conduct themselves under color of state law. See generally, *Drollinger v. Milligan*, 552

F.2d 1220 (7th Cir.1977). To establish liability, however, the Plaintiff must also show that each Defendant "committed" the conduct of which she complains. The doctrine of *respondant superior* does not apply; absent direct involvement in the alleged constitutional deprivation, no liability will attach. *Crowder v. Lash*, 687 F.2d 996 (7th Cir.1982).

The second branch of the proof of a claim under § 1983 implicates the concepts of causation and mental state grafted from the common law.

A defendant may not be found to have violated § 1983 unless his alleged conduct can be said to have *caused* the alleged injury. See *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Lossman v. Perkarske*, 707 F.2d 288, 290–91 (7th Cir.1983); cf. *Taliferro v. Augle*, 757 F.2d 157, 161–62 (7th Cir.1985) (dealing primarily with damages). The plaintiff may prevail in a suit under 42 U.S.C. § 1983 only if he can establish that the deprivation of rights he complains of would not have occurred *"but for"* the Defendant's conduct. *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619; *Lossman*, 707 F.2d at 291.

The mental state required for establishing a violation of § 1983 depends on the particular constitutional provision at issue. *E.g., Crawford v. Edmonson*, 764 F.2d 479, 486 (7th Cir. (1985). Thus, before determining the mental state that a plaintiff must prove, the court must first determine with precision the constitutional right upon which Defendants allegedly infringed.

Throughout the course of this litigation, the Plaintiff has never made precisely clear what federal right Defendants allegedly denied her. Her amended complaint merely states that "Plaintiff was entitled to protection by the Fourteenth Amendment to the United States Constitution from discrimination by Defendants on the basis of sex in the matters of employment." (Amended

---

1. For a comprehensive overview of the law pertaining to employment discrimination, see Schiff, *Reverse Discrimination Re-Defined as*

*Equal Protection: The Orwellian Nightmare in the Enforcement of Civil Rights Laws,* 8 Harv. J.L. & Pub.Pol. 627 (1985).

Complaint, Item # 33, par. 22.) The Fourteenth Amendment provides in relevant part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The Plaintiff does not assert any right peculiar to citizenship nor does she challenge any state law. An employment application does not implicate any life or property interest. Nor does the denial of reemployment infringe on constitutionally protected liberty—unless the manner of the denial attaches some permanent stigma to the applicant which precludes future employment. *Munson v. Friske,* 754 F.2d 683, 693–94 (7th Cir.1985). The Plaintiff has neither alleged nor proved any permanent stigma resulting from her failure to obtain reemployment. Thus, Plaintiff may not assert any denial of substantive or procedural due process.

The Plaintiff's claim must, therefore, rest on the most obvious theory that she was denied the equal protection of the laws. An employee of the state, imbued with state authority, "subjected" the Plaintiff's job application to special consideration because of her classification as a woman—a deprivation of the Plaintiff's constitutional right to be free from such a classification by the state unless the classification appears justified after careful scrutiny. 42 U.S.C. § 1983. Defendant asserts no justification for the alleged classification. Thus, sex discrimination, if it occurred, would be unconstitutional.

To maintain a claim under 42 U.S.C. § 1983 based on the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that a defendant discriminated *intentionally. See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 278–80, 99 S.Ct. 2282, 2295–96, 60 L.Ed.2d 870 (1979); *Parker v.*

*Board of School Commissioners of the City of Indianapolis,* 729 F.2d 524, 528 (7th Cir.1984); cf. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (cause of action under 42 U.S.C. § 1981).

## ANALYSIS

Applying the legal concepts of *causation* and *intent* to the facts of this case, no reasonable jury could find any of the defendants liable under 42 U.S.C. § 1983.

■ I. Director McMillan had no direct involvement in the selection process to which Plaintiff objects. The Plaintiff cannot attach liability to him simply by having sought and obtained a meeting with the director. The director's expressions of assurance that Plaintiff's job application would receive fair consideration negates rather than establishes any inference of discriminatory intent. The procedure for screening applications established to follow through on the director's assurances further demonstrates a sincere desire to ensure fairness and precludes any conclusion that the Plaintiff would have obtained the open position "but for" the director.

It is true that after Plaintiff's interview with the director, Evans was made chairman of the screening committee, but he only played the limited role of compiling the rankings made by three female employees who reviewed the applications independently, made *all* of the *initial* evaluations and made the *only* evaluations of Plaintiff's application. To add an additional check on the process, Assistant Director Hedrick read through the applications, reviewed the screening committee members' recommendations, and ascertained that Evans' compilation of the rankings accurately reflected the screening committee's evaluations.

Director McMillan's only participation in the entire selection process was to assure the establishment of a structured review process and to approve the final recommendation previously approved by Assistant Director Hedrick and the screening commit-

tee. Almost every operating procedure in an organization can be said to have been initiated by the chief executive, and almost every decision eventually receives his or her approval, but such events cannot form the basis of liability under 42 U.S.C. § 1983. Some greater involvement is required. Moreover, the procedure established here appears unobjectionable. Its checks and reviews aim at achieving fairness in the selection procedure without wholly excluding from the process those employees most qualified to make the selection.

■ II. As with Director McMillan, Assistant Director Hedrick's participation in the candidate screening process was minimal albeit more direct. The evidence adduced at trial does not offer a shred of support for Plaintiff's necessary contention that the assistant director harbored discriminatory intent. Hedrick knew that Evans preferred that a man fill the Collections Assistantship. But the application form did not in any manner favor men. The Plaintiff insists that Hedrick discouraged her from seeking the assistantship but she offers no evidence to support a reasonable inference that Hedrick discouraged her from applying because she was a woman. Moreover, even if Hedrick shared Evans' discriminatory animous, the record reveals no fact or inference to support the necessary proposition that "but for" Hedrick's sexism, Plaintiff would not have been discriminated against. Hedrick did not evaluate the Plaintiff's application; his function was to ensure that Evans' compilations accurately reflected the three female screening committee members' evaluations.

■ III. The Plaintiff's "proofs" against Defendants McKenna, Johnson, and Pickel-Hedrick—the female employees who screened the twenty-six applications—also failed to demonstrate any sexist animus. Two of the three screening committee members had input into the drafting of the application which contained no sex biased material. They all knew of Evans' preference that a man fill the position, yet they all ranked women among the most qualified applicants. The rankings—at least with respect to Plaintiff and the six male and female finalists—correctly evaluated the finalists as the superior candidates based on the legitimate criteria of age, experience, education, and background. Finally, they each made their evaluations independently; no single set of evaluations controlled the selection process. Thus, in the absence of any proof that they acted in concert to deny Plaintiff equal consideration, Plaintiff cannot reasonably maintain that she would have received the position "but for" any single member's discriminatory intent.

■ IV. With respect to Evans, the Plaintiff may have established facts sufficient to support an *inference* that he intended to deny her the collections assistantship because of her sex. He did publicly state that he preferred a man for the open position, although he proceeded to draft an application form that is without sex bias. The selection process used, however, prevented Mr. Evans from interfering with the Plaintiff's application unless and until she received favorable evaluations from three of her fellow workers. While Mr. Evans made his preference known to the members of the *ad hoc* screening committee, the evidence indicates that despite his preferences the committee members recommended women as top contenders for the available position. Evans simply was not in a position to cause the Plaintiff to be denied her equal rights under the law. The evidence against Evans falls woefully short of the "but for" mark.

*Causation* is a more difficult concept to comprehend than *intent;* it requires the application of a legal concept in addition to common intuition. A jury sensing the presence of an impermissable animus might very well overlook the necessity of determining what consequence resulted, as a matter of law, from a clearly prohibited state of mind. The Court recognizes that the elements of a sex discrimination claim require the application of intuition. As a general principle, the law wisely consigns

the determination of such issues to the jury. However, the Court cannot, consistent with its duty, sanction a misunderstanding of the facts and a misapplication of the law. *Cf., Box v. A & P Tea Co.,* 772 F.2d 1372, 1378 (7th Cir.1985).

■ Plaintiff's theory of liability in this case is most troubling. In essence, her argument appears to be that "one rotten apple spoils the barrel." But she has not established that any of the Defendants were rotten. Moreover, the law of apple barrels does not govern the law of sex discrimination. Plaintiff argues that if one employee has manifested an unconstitutional intent to discriminate in the hiring process the entire process is therefore tainted. The procedure of independent checks and reviews established here do not satisfy her.

Apparently, only an independent review by persons wholly unaware of the existence of any sex based animus will satisfy Plaintiff. Such an impracticable standard would effectively preclude employers from fulfilling their *responsibility* to serve as the first bulwark against discrimination. Employers must be allowed to fashion employment procedures which will involve those employees most qualified to make efficient, informed employment decisions and yet prevent any single employee, who is essential to the decision making process, from *exercising* his personal preferences or impermissable prejudices.

The courts' "task ... is not to assess the 'wisdom' of employment decisions but rather to determine whether an employer's selection procedures comport with the law." *Parker,* 729 F.2d at 529. The procedures employed here do comport with the law. They prevented any one person's preference or prejudice from controlling the selection process and more particularly they insured that each applicant obtained individual consideration by informed decision makers whose evaluations were based on legitimate criteria.

### 42 U.S.C. § 1985(3)

■ The portion of 42 U.S.C. § 1985(3) relevant to this cause of action reads:

If two or more persons ... *conspire* ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphasis added).

For the purpose of this opinion, the Court accepts that women constitute one of the classes "that have been previously recognized as *possibly* supporting a Section 1985(3) claim." *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1486 (7th Cir.1985) (emphasis added). See also *Life Insurance Company of North America v. Reichardt,* 591 F.2d 499 (9th Cir.1979) (finding "women" a class within the protective ambit of 42 U.S.C. § 1985(3) ). *But see Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (42 U.S.C. § 1985(3) does not cover claims such as sex discrimination for which other statutory remedies exist). Nevertheless, as discussed *supra,* no jury could reasonably find the necessary invidious class based animus motivating more than a single defendant. *Griffin v. Breckenridge,* 403 U.S. 88, 103 n. 10, 91 S.Ct. 1790, 1798 n. 10, 29 L.Ed.2d 338 (1971). More specifically, the Plaintiff has adduced no evidence indicating an *agreement* to discriminate which is a necessary pre-requisite to any finding of conspiracy. The existence of a conspiracy by the very nature of conspiracy is a difficult proposition to prove. *Quinones v. Szorc,* 771 F.2d 289, 291 (7th Cir.1985). But this difficulty does not remove the Plaintiff's burden to prove the existence of a conspiracy by a preponderance of the evidence. Where, as here, the available evidence as to the alleged overt acts in furtherance of the conspiracy indicates that all of the named Defendants disagreed with, ignored, and/or acted in contravention of Evans' articulated preference for a male, the existence of a conspiracy simply cannot be established.

In addition to the inadequacy of the proof, the single, intra-entity conspiracy which Plaintiff attempts to prove does not establish a legal claim. *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir.1972); cf. *Craft v. Board of Trustees*, 516 F.Supp. 1317, 1324 (N.D.Ill.1981) (Flaum, J., found § 1985(3) applicable where the employees of a business entity engaged in a continuing "series of discriminatory acts" not "a single act of discrimination" as alleged here).

At trial, a plaintiff must adduce evidence sufficient to support all of the elements the law requires for the jury to find liability. Allegations, insinuations, and argument will not suffice. The evidence here did not satisfy the burden, and the jury verdict cannot stand.

Judgment n.o.v. for Defendant Robert Evans.