Rodney L. YOWELL,
Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE,
et al., Defendants-Appellees.

No. 85–2491.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1986.

Decided Jan. 16, 1987.

Kaaring Salovaara, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Harold R. Bickham, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and GORDON, Senior District Judge.*

MYRON L. GORDON, Senior District Judge.

Plaintiff Rodney L. Yowell, a black male, was employed by the United States Postal Service. He was discharged in late 1980 and brought this Title VII action, alleging that the discharge occurred because of his race. After a bench trial, the district court found that Mr. Yowell had not been fired on account of his race and entered judgment for the defendants. We affirm.

## I. BACKGROUND

Rodney Yowell has been employed in a number of capacities, including military service during the war in Vietnam and three separate appointments to the United States Postal Service. For purposes of the instant appeal, we are primarily concerned with the events leading up to his removal from his most recent postal service assignment, which commenced in February 1980. At that time, Mr. Yowell began working as a part-time flexible mail handler. He successfully completed a 90–day probationary period, but he subsequently experienced disciplinary problems for poor attendance and insubordination.

At the time of Mr. Yowell's employment in 1980, the postal service's disciplinary procedure consisted of four formal steps: First, the employee would receive a letter of warning regarding certain unacceptable action. Next, if the offense continued following receipt of the warning letter, the employee would be given a notice of a seven-day suspension. If, upon return from the seven-day suspension, there was no improvement, the employee would be suspended for an additional fourteen days. Only after each of these three steps proved fruitless would the postal service undertake its fourth and final disciplinary step: the issuance of a notice of removal. Supervisors were encouraged, although not required, to hold an informal discussion with any errant employee before initiating the four-step procedure. However, even while the formal process was underway, the employee had an opportunity to appeal each step pursuant to the grievance procedure set forth in the postal service employees' collective bargaining agreement.

The formal disciplinary procedure was pursued to the final step in Rodney Yowell's case. A quick summary of his last months with the postal service illustrates how and why. Mr. Yowell first received a letter of warning dated September 3, 1980, regarding his unsatisfactory attendance. The letter admonished Mr. Yowell that "[c]ontinued irregularities regarding [his] attendance may result in further disciplinary actions." Then, on September 7, 1980, Mr. Yowell refused to dump mail even after he was so instructed by his supervisor. On September 12, 1980, Mr. Yowell received another letter of warning concerning this failure to follow instructions.

Mr. Yowell's attendance was also a continuing source of concern. In October 1980, Mr. Yowell left his job early without permission from his supervisor. Five days

---

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

later he received a notice of suspension for seven days; the notice referred to the absence without leave (AWOL) of five days earlier and the September letter of warning. Mr. Yowell returned to work one day late following his seven-day suspension. Accordingly, he received another notice of suspension, this one for fourteen days, because of his tardy return and prior attendance problems. Upon returning to work after his second and longer suspension, Mr. Yowell refused to attend a mandatory safety meeting.

On Thanksgiving Day, Mr. Yowell sought, and was denied, permission to leave early for dinner. Later that day he approached his supervisor, complaining of stomach pains and dizziness. In view of these symptoms, Mr. Yowell's supervisor approved sick leave for Mr. Yowell, but instructed him to bring medical documentation upon returning. On November 29, 1980, the day Mr. Yowell returned to work after Thanksgiving, he failed to submit the requested documentation, but he then approached his supervisor with yet another request to leave early. Mr. Yowell requested such permission in this instance because he claimed that he could not control his anger towards the general superintendent who, Mr. Yowell alleged, had made improper advances towards Mr. Yowell's younger sister. Denied permission to leave for this reason, Mr. Yowell nevertheless walked off of his job on that day.

On December 9, 1980, Mr. Yowell received a letter of removal effective January 16, 1981. The reasons for removal included Mr. Yowell's persistent unsatisfactory attendance, two occasions of being AWOL, as well as the letter of warning and suspension notices that Mr. Yowell had already received. Mr. Yowell received a seven-day suspension notice on that day, as well, for his failure to follow instructions regarding the mandatory safety meeting. This suspension commenced on December 13, 1980. Mr. Yowell worked until December 12, 1980, but never returned to work despite the fact that his removal was not effective until the middle of January.

Every disciplinary action taken against Mr. Yowell notified him of his right to appeal pursuant to the union's collective bargaining agreement. Mr. Yowell, however, chose not to utilize the established grievance procedure because of his dissatisfaction with the union. A grievance was, nevertheless, filed by the union on behalf of Mr. Yowell regarding the notice of removal; the grievance was denied.

Mr. Yowell filed a complaint alleging race discrimination with an EEOC counselor who concluded that Mr. Yowell was unlawfully removed from his postal service position on grounds of his race. The postal service appealed this decision to the Postal Service Regional Director, Central Regional Office of the United States Postal Service. On appeal, the EEOC counselor's decision was overturned.

Mr. Yowell commenced this litigation with the timely filing of a complaint in the district court for the southern district of Indiana. That court denied the defendants' motion for summary judgment, and a trial to the court was held on June 13 and 14, 1985.

At the trial, the postal service defendants contended that their decision to discharge Mr. Yowell was based on his spotty attendance record and not his race. In rebuttal, Mr. Yowell introduced evidence regarding three white employees who, despite spotty attendance records, were not removed from their postal service positions. This showing was an attempt by the plaintiff to demonstrate that the defendants' asserted reason for discharging Mr. Yowell was mere pretext for discrimination. The district judge was not persuaded by the plaintiff's demonstration; he determined that the three white employees' circumstances were not sufficiently similar to the plaintiff's to serve as useful comparisons in this matter. Accordingly, he found that the defendants' articulated nondiscriminatory reason had not been rebutted and entered judgment, as noted, in favor of the defendants. Moreover, the lower court judge arrived at an alternative conclusion in disposing of this case; he determined that the plaintiff

did not establish even a prima facie case of discrimination.

On appeal, Mr. Yowell challenges both of the district court's determinations. The issues he raised for our review are whether the trial court erred in determining that the plaintiff did not establish a prima facie case and whether the trial court's findings regarding the white employees' dissimilarity to Rodney Yowell are clearly erroneous.

## II. ANALYSIS

The set of rules governing the burden of proof, burdens of production and three-stage sequence of proof in Title VII cases was first promulgated by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). They have been described and applied by this court on many occasions. *See, e.g., Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985); *Coates v. Johnson & Johnson Co.*, 756 F.2d 524, 530–31 (7th Cir.1985); *Parker v. Board of School Commissioners*, 729 F.2d 524, 526 (7th Cir. 1984). A brief summary will be helpful as we embark upon our analysis of the instant Title VII case.

The burden of proof rests on the plaintiff throughout the case. *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff must first establish a prima facie case of intentional discrimination by offering evidence to raise an inference that the plaintiff was discharged on the basis of his race. *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); *See also McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. Once a prima facie case is established, only the burden of production shifts to the defendant to articulate a "legitimate nondiscriminatory reason for the employee's removal." *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff then has the opportunity to demonstrate, by a preponderance

of the evidence, that the defendant's articulated reason is mere "pretext" for discrimination. *Id.* at 254–56, 101 S.Ct. at 1094–95. If the case reaches this third stage of analysis, the plaintiff's burden of showing pretext "merges with the ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." *Andre, supra*, 774 F.2d at 794.

A. We are mindful of this ultimate burden as we address the first issue raised on appeal by Mr. Yowell. When a Title VII case is fully tried, and the defendant employer produces evidence of a nondiscriminatory, legitimate reason for discharging the plaintiff employee, whether the plaintiff established a prima facie case is an irrelevant issue. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Andre, supra*, 774 F.2d at 792. Digression from this sound rule would require us needlessly to focus our inquiry on the existence of a prima facie case, rather than on the more significant, fundamental question of the existence of discrimination. Our task in this Title VII case should not be hampered by the legal rules devised to facilitate it. The methodology set forth in *McDonnell Douglas* and *Burdine* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

In the instant case below, the plaintiff survived a motion for summary judgment. The case then proceeded to a full trial where the postal service was required to set forth a legitimate reason for Mr. Yowell's removal. Thus, it was unnecessary for the district court to promulgate a ruling on the plaintiff's prima facie case. It is likewise unnecessary for us to pursue this issue further. Accordingly, without addressing the substance of the district court's conclusion on this matter, we proceed to review the district court's alterna-

tive determination that the plaintiff failed to meet his burden of proving intentional discrimination.

■ B. Our review of this issue is constrained by Rule 52, Federal Rules of Civil Procedure, which requires us to affirm the district court's findings of facts, as well as its ultimate finding of intentional discrimination, unless they are clearly erroneous. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). *Accord Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (analyzing the clearly erroneous standard as it applies to Title VII cases). The district court's finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson, supra,* 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). However, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of facts, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson, supra,* 470 U.S. at 574, 105 S.Ct. at 1512. This deferential standard of review preserves the district court's unique factfinding function.

Therefore, operating under these narrow parameters of review, we now consider the district court's ultimate finding that the postal service did not intentionally discriminate against Rodney Yowell. The district court rejected the plaintiff's attempt to demonstrate pretext by finding that the personnel records of three white employees proffered by the plaintiff were not comparable to Mr. Yowell's record. Mr. Yowell challenges three of the factual findings upon which the district court based this

determination. We shall consider each of these separately.

1. The district court found that "all three comparison employees grieved the disciplinary action taken against them." Mr. Yowell contends that this finding is clearly erroneous because a grievance was filed on his behalf by the union. We disagree. Strictly speaking, Mr. Yowell did not, himself, file a grievance to challenge any of the disciplinary actions undertaken against him. Although the union filed a grievance on his behalf with respect to his notice of removal, the grievance was denied and the union did not pursue the matter on appeal.

According to the defendants, the union's lack of enthusiasm for the Yowell matter may be attributable to Mr. Yowell's own apparent lack of enthusiasm. The record reveals that when the union filed an initial grievance on behalf of Mr. Yowell, Mr. Yowell had already abandoned his job. He was not personally involved with his grievance process, unlike the three white comparison employees. This distinction is sufficiently supported by the evidence and sustains the district court's finding.

Arguably, a different interpretation of the evidence could support a different conclusion. Nevertheless, in such a situation, the district court's equally permissible view of the facts will be deemed not clearly erroneous by this reviewing court. *See Anderson, supra,* 470 U.S. at 574, 105 S.Ct. at 1512. *See also Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 857–58, 102 S.Ct. 2182, 2190–91, 72 L.Ed.2d 606 (1982) ("An appellate court cannot substitute its interpretation of the evidence for that of the trial court. . . .").

2. The plaintiff also challenges the district court's finding that the comparison employees' offenses were less serious than Mr. Yowell's offenses. Again, we are not persuaded that the district court clearly erred on this point. Dennis Sherfy, Director of Employment Relations, testified that leaving work after being denied permission to leave constitutes AWOL of a more serious nature than an unintentional

absence without leave. *See* Tr. II, p. 26. In addition, two of Mr. Yowell's supervisors testified that Mr. Yowell was the *only* employee who left work despite being denied permission to leave. *See* Tr. I, p. 163 (Direct examination of Norman Craig); Tr. II, pp. 61–62 (Direct examination of Dorothy Flourney).

Thus, while in form it may appear that Mr. Yowell and the comparison employees possess similar work records regarding the frequency of AWOLs, the record suggests that in substance, at least one of Mr. Yowell's AWOLs, an intentional absence occurring on November 29, 1980, when Mr. Yowell claims to have been powerless to curb his anger towards one of his supervisors, constituted an unusually serious offense. In light of this evidence, we are not left with a "firm conviction that a mistake has been committed." *Anderson, supra,* 470 U.S. at 573, 105 S.Ct. at 1511.

3. The district court found further that two of the comparison employees were also dissimilar to Mr. Yowell in terms of employment status. Two of the white employees were full-time mail handlers, one of whom was also preference eligible. A preference eligible employee has completed at least one year of continuous postal service. Mr. Yowell does not dispute the distinction in employment status between himself and the comparison employees; he argues that the lower court erred in not finding that in spite of these distinctions, the comparison employees were sufficiently similar to require a conclusion of disparate treatment. We disagree.

The record suggests that preference eligible employees are entitled to more deferential treatment than are non-preference eligible employees like Mr. Yowell. *See* Tr. I. pp. 72–77. As to full-time employees, the record is not clear. However, the burden of proof to prove similarity was on the plaintiff at this stage of the case. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093. In view of the ambiguous record on this point, we must affirm the district court's finding that Mr. Yowell failed to discharge his burden.

Thus, we are persuaded that the district court's findings are not clearly erroneous, in light of the record viewed in its entirety and must be affirmed. *See Anderson, supra,* 470 U.S. at 574, 105 S.Ct. at 1512. Mr. Yowell contends that the lower court nevertheless should be reversed and remanded because the reasons on which its findings are based were not expressly articulated by the defendant during the case below. This theory, however, overlooks the significance of the order of proof and allocation of burdens in this type of case.

The plaintiff's theory is derived from a reading of a decision by the court of appeals for the fifth circuit: *Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425 (5th Cir. 1984), *modified on other grounds on rehearing,* 753 F.2d 369 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). That decision provides additional clarification of a defendant's burden of production at the second stage of a Title VII case. According to *Uviedo,* a Title VII defendant must expressly articulate specific facts alleged to be the reasons for the defendant's actions. "It is beyond the province of a trial or reviewing court to determine—after the fact—that certain facts in the record must have served as the basis for an employer's personnel decision." *Uviedo, supra,* 738 F.2d at 1430. Requiring the defendant to provide specific facts is consistent with the objective of the defendant's burden of production under the *McDonnell Douglas/Burdine* system, which is to "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine, supra,* 450 U.S. at 255–56, 101 S.Ct. at 1095.

In the instant case, the defendants framed the factual issue precisely. To explain their action against Mr. Yowell, the postal service introduced evidence suggesting that Mr. Yowell had been disciplined because his attendance was unsatisfactory, and because he failed to follow instructions. The record adequately supports

these reasons, and the plaintiff was sufficiently apprised of them to be afforded a "full and fair opportunity to demonstrate pretext." Accordingly, we conclude that the defendants carried their burden of production below; no more is required of a Title VII defendant.

It was, therefore, Mr. Yowell's burden clearly to articulate evidence of pretext by demonstrating that he was treated differently than were white employees. The trial court concluded that Mr. Yowell failed to satisfy this burden. For the reasons set forth above, we are persuaded that this finding is not clearly erroneous.

C. Mr. Yowell also argues that the district court erroneously relied on the statistical evidence proffered by the postal service to counter any claims of intentional discrimination. The postal service's statistical evidence indicates that disciplinary actions against all members of Mr. Yowell's working group (tour) have been taken in a nondiscriminatory manner. Although the plaintiff is correct in asserting that an employer's demonstration that a disciplinary policy does not disproportionately impact on minorities cannot rebut a showing of race discrimination against an *individual, Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *cf. Arizona Governing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (individual woman suffers sex discrimination when she is paid lower pension benefits even though women, as a class, live longer than men), the tour statistics in the case at bar were not used by the court in this manner. The district court used the information to emphasize the weakness of the plaintiff's attempted showing of pretext. This court has recently approved the use of workforce statistics for such emphasis. *See Parker, supra,* 729 F.2d at 528. We find, therefore, that the district court did not err in considering the statistical evidence presented by the postal service "since the evidence was not used to rebut a finding of discrimination." *Id.*

## III. CONCLUSION

The record in this case is replete with nondiscriminatory reasons for Mr. Yowell's discharge. The trial court did not err in arriving at its findings and conclusions after reviewing the evidence in its entirety. Application of the legal rules set forth in *McDonnell Douglas, Burdine,* and their progency does not alter this ultimate conclusion. The decision of the district court is therefore AFFIRMED.